IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

REYNOLDS PROPERTIES LLC )
and STEVEN D. REYNOLDS, )
)
Plaintiffs, ) TC-MD 110212C
)
v. )
)
LINN COUNTY ASSESSOR, )
)
Defendant. ) **DECISION**

Plaintiffs have appealed the real market value (RMV) of certain real property identified

in the assessor's records as Account 95303 for the 2010-11 tax year. Trial in the matter was held

November 28, 2011. Steven D. Reynolds appeared for Plaintiffs. Defendant was represented by

Natalie Bauer, Residential Appraiser, Linn County Assessor's office.

I. STATEMENT OF FACTS

The subject property is a 0.28 acre lot in Albany, Oregon, located near railroad tracks,

with two dwellings built in the 1940s. A permit has been issued for the demolition of one of the

two structures. The property is on an unimproved street that is not paved, and has no city water

or sidewalks/curb cuts, but does have city sewer service. Plaintiffs purchased the property on or

about October 11, 2010, for $16,000. Plaintiffs are requesting a reduction in the RMV to the

purchase price plus any applicable trending back to the January 1, 2010, assessment date. (Ptf's

Ex 1 at 1.) Plaintiffs would further like the ratio of land RMV and improvement RMV to remain

consistent with current values on a percentage basis. (*Id*.)

The RMV originally established by Defendant and appearing on the tax statement was

$74,250 with $40,410 allocated to the land and $33,840 to the improvements (structures)(Ptfs'

Compl at 3.). The maximum assessed value (MAV) was $79,070. (*Id*.) The assessed value

(AV) was $74,250, because the RMV of $74,250 is less than the MAV of $79,070. *See generally* ORS 308.146(2) (providing that AV is generally the lesser of RMV or MAV).[1]

Plaintiffs appealed those values to the Linn County Board of Property Tax Appeals (Board) and the Board reduced the RMV to $31,000, allocating $25,000 to the land and $6000 to the improvements. Consistent with ORS 308.146(2), the Board reduced the AV to $31,000.

Plaintiffs appealed the Board's order to this court, requesting that the RMV be reduced to $16,000 based on the October 11, 2010, purchase price. Defendant is requesting that the Board's $31,000 RMV determination be upheld. Defendant submitted a valuation report estimating the value at $31,000. (Def's Ex A at 1.)

II. ANALYSIS

The issue in this case is the RMV of the subject property, a roughly 1/4 acre lot with two old buildings, as of January 1, 2010, which is the assessment date for the 2010-11 tax year. ORS 308.007; ORS 308.210.

Oregon law defines RMV for property assessment and taxation purposes as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1).

While there are three recognized methods for valuing property, the sales comparison approach is generally viewed as most appropriate for valuing residential property. This is particularly true for older properties because substantial adjustments must be made under the cost approach and if the property is not generating income the income capitalization approach is

---

[1] Unless noted otherwise, all references to the Oregon Revised Statutes (ORS) are to 2009.

inapplicable .[2] *Ward v. Dept. of Revenue*, 293 Or 506, 511, 650 P2d 923 (1982) (citations omitted). Under the sales comparison approach, the court looks at arm's length sales transactions of similar property to determine a correct RMV. *Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620 at *3 (Mar 26, 2003).

The value of property is ultimately a question of fact. *Chart Development Corp. v. Dept. of Rev.*, 16 OTR 9, 11 (2001) (citation omitted). The sale of the subject property can provide a useful indication of the value of the property. *Kem v. Dept. of Rev.*, 267 Or 111, 114, 514 P2d 1335 (1973) (citations omitted) (ruling that a recent sale of the property in question can be persuasive although not conclusive of a property's value). The Oregon Supreme Court in the *Kem* case ruled that "[a] recent sale of the [subject] property * * * is important in determining its market value. If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sales price, while certainly not conclusive, is *very persuasive* of the market value." *Id*. (Citations omitted) (emphasis added). However, the Court in *Kem* "emphasize[d] that a recent sale of the subject property is not necessarily *determinative* of market value and does not foreclose other methods of valuation[.]" *Id*. at 115 (emphasis added); s*ee also Sabin v. Dept. of Rev.*, 270 Or 422, 426-27, 528 P2d 69 (1974); *Equity Land Res. v. Dept. of Rev.*, 268 Or 410, 415, 521 P2d 324 (1974). The two important considerations are whether the sale was "recent" and whether it was "arm's length." *Kem,* 267 Or at 114.

/ / /

---

[2] An administrative rule promulgated by the Oregon Department of Revenue instructs that the three approaches to value--sales comparison, cost, and income--be considered in determining a property's value, but recognizes that all three approaches may not be applicable in a given case. OAR 150-308.205-(A)(2) (2009). Because the subject property is owner occupied and does not generate any income, neither party used the income approach in valuing Plaintiff's property. Because land value is at issue, the typical methodology prescribed by the cost approach is not relevant.

By statute, Plaintiffs have the burden of proof and must establish an error in the record assessment by a "preponderance" of the evidence. ORS 305.427. This court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971); *see also Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 394, 737 P2d 595 (1987) (where the Oregon Supreme Court explained that the derivation of the word "preponderance" is Latin in origin and "translates to 'outweigh, be of greater weight.' ").

Burden of proof requires that the party seeking relief (Plaintiffs in this case) provide evidence to support their argument. The evidence that a plaintiff provides must be competent evidence of the requested RMV of the property in order to sustain the burden of proof. *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002).

Plaintiffs rely on the sale of the subject property in early October 2010, for $16,000 in support of their request for a reduction in the RMV to that figure. That sale occurred roughly nine months after the January 1, 2010, assessment date. Reynolds insists the sale meets the requirements of an "arm's length" transaction because he is in the business of buying properties and the seller, a financial lending institution (bank), is also knowledgeable about real estate values and utilized the services of a real estate broker to sell the subject property. Both parties are therefore "informed" according to Reynolds. Also, Reynolds argues the sale was arm's length because he and the bank are unrelated parties. Additionally, Reynolds notes that the property was listed for at least six months prior to his acquisition and that the asking price was reduced five times during that time period. Reynolds testified that he negotiated with the bank's broker for several months before arriving at a mutually acceptable purchase price. Reynolds argues that the purchase price for the subject property is, in this case, more reliable than

Defendant's attempt to estimate the value of the property based on the unadjusted sale prices of other properties.

Moreover, both of the structures on the property are more than 50 years old and at least one of them will likely be torn down and removed. As to the other structure, Reynolds is undertaking significant remodeling to make the building rentable, although the parties agree it will not meet code requirements and, unless Reynolds takes significant steps to change the property (*e.g.*, seeks to erect a new dwelling), he will not be required to bring the home up to code. The structure Reynolds is remodeling is not currently rentable. Nor is the one he is in the process of tearing down.

Defendant is asking the court to sustain the Board's $31,000 RMV, leaving the land RMV at $25,000 and the RMV of the buildings at $6000. Defendant did not submit an appraisal report, but simply submitted information on five sales, three of which are sales of improved properties, with the remaining two being land only. The sale prices range from a high of $60,000 for a property with a home that is far superior to the subject, to a low of $34,500 for a 0.18 acre undeveloped lot sold by a bank. Bauer noted that Plaintiffs' property can be divided into three lots, although that division would require that Reynolds go through the applicable permitting process necessitating that he pave the road, put in sidewalks and curb cuts, and bring city water to the property. Bauer testified that she was advised by an employee in the county planning office that the cost of those improvements would be approximately $25,000. The individual providing information was not named and did not testify at trial. There is no information as to how that person arrived at the $25,000 estimate.

Bauer further testified that Reynolds could tear down one of the two buildings on the property and add a single family dwelling or a duplex without having to go through the

permitting process and make external improvements (city water, paving, sidewalks and curb cuts). Bauer testified that the land RMV was reduced at the Board level from $40,410 to $25,000 because the subject property is next to railroad tracks and lacks city water.

Although this case is less significant than many heard by the court in terms of the value amount at issue, it presents a somewhat difficult problem. Plaintiffs purchased the property from a bank nine months after the assessment date for $16,000. A post-assessment date sale from a lender who reacquired the property after the former owner defaulted on a loan does raise some questions about whether the sale is truly indicative of the market. In other words, is the property really worth only $16,000 or did Reynolds get a bargain? When questioned by the court, Reynolds candidly admitted that he was not sure if it was a "distressed sale," that the sale "*might be market*," but that he was not convinced he got a "deal" because of the age and location of the property and all of the work involved in making it usable, and the fact that he spent months negotiating the sales price with the bank's broker (which is indicative of a market-negotiated purchase price).

Defendant asks the court to sustain the Board's RMV determinations based on unadjusted sales of properties that Reynolds argues are not really comparable to the subject property. OAR 150-308.205-(A)(2)(c) sets forth the requirements for the use of the sales comparison approach:

> "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arm's-length market transactions."

This court has previously noted that:

> "[a]djustments are a key component in evaluating properties. According to *The Appraisal of Real Estate*:
>
> " 'Ideally, if all comparable properties are identical to the subject property, no adjustments will be required. However, this is rarely the case * * *. After

researching and verifying transactional data and selecting the appropriate unit of comparison, the appraiser adjusts for any differences.' Appraisal Institute, *The Appraisal of Real Estate* 307 (13th ed 2008.)

"Raw, unrefined price information is not enough."

*Zakharyuk v. Clackamas County Assessor*, TC-MD 080357B (Dec 12, 2008).

Reviewing the evidence as a whole, the court finds that the sale price is a good starting point for determining the value of the subject property. However, given the fact that the property sold nine months after the January 1, 2010, assessment date, and that Reynolds purchased the property from a lending institution, some adjustment seems necessary to arrive at a more accurate and realistic market value determination. Reynolds testified that in the latter stages of his negotiations with the bank's broker, the bank was pushing for $19,900. Based on that and other evidence before the court, the court concludes that the subject's RMV as of January 1, 2010, was $20,000.

## III. CONCLUSION

The court concludes that Plaintiffs have established an error in the RMV of the subject property as reduced by the Board, and that the RMV should be, and is hereby, reduced to $20,000 for the 2010-11 tax year (*i.e.*, as of January 1, 2010). Now, therefore,

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is granted in part with a reduction of the RMV of property identified as Account 95303 to $20,000 for the 2010-11 tax year as explained more fully above.

Dated this ___ day of January 2012.

_____
DAN ROBINSON
MAGISTRATE

***If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.***

***This document was signed by Magistrate Dan Robinson on January 12, 2012. The Court filed and entered this document on January 12, 2012.***